William R. Brennan, Jr., J.
Petitioner, Cedar Brook Country Club, Inc., a membership corporation, which is the owner of the land, buildings and equipment constituting a 125-acre golf course in Old Brookville, seeks in this article 78 CPLR proceeding to annul a determination of the respondent State Liquor Authority disapproving its application for a golf club liquor license and directing the issuance thereof.
The-application was filed with the local Alcoholic Beverage Control Board on January 13,1966, and that board recommended *725 to the respondent Authority that the application be approved on February 3, 1966. No hearing on the application was ever held by the respondent State Liquor Authority or the Alcoholic Beverage Control Board, but on March 18, 1966 the Authority notified the petitioner of its refusal to issue the license. The basis of the refusal was twofold; i.e., that the applicant was not a bona fide club within the meaning of the Alcoholic Beverage Control Law, and that appellant club was not the sole party in interest in the application.
Thus, the 19th hole at Cedar Brook is out of bounds and, golf being what it is, the other 18 are in grave jeopardy. Since the success of a golf club which caters exclusively to teetotaling swingers is at least dubious, it must be concluded that the action of the State Liquor Authority will have economic repercussions somewhat beyond the realm of alcoholic deprivation.
Petitioner’s predecessor in title was the County Club Land Corp. of which Messrs. Julian Cascardi, Samuel J. Zara and Graziano Zara were principals. This corporation leased the property to a different membership corporation of which Cascardi and the Zaras were both officers and governors. A golf club liquor license was issued to that corporation in 1961 and renewed annually thereafter. In March of 1964 the Zaras were indicted for grand larceny and conspiracy, and the following year’s license was then issued under a stipulation reserving to the Authority the right to revoke or suspend the- license depending upon the outcome of the criminal case. While the criminal proceedings were still pending, the club was sold by Messrs. Zara, Cascardi and Zara to the petitioner. The purchase price was $2,950,000, of which $350,000 was paid in cash through capital contributions of some 70 members of the petitioner corporation in the amount of $5,500 each. The balance of $2,600,000 was in the form of purchase-money mortgages taken back by the sellers. In addition to the purchase-money mortgages, the sellers and their families were granted six life memberships in the petitioner corporation with a waiver of initiation fees, annual dues and assessments. Neither the Zaras nor Mr. Cascardi hold any office or directorship in the petitioner corporation nor do either of them under their so-called “ life membership ” have any right to vote or to participate in the management of the petitioner corporation. There is nothing in the record which indicates or even suggests that any of the present 70 members of the petitioner corporation are other than well-respected members of the community with backgrounds fully suitable for licensee status. None of the foregoing facts are in any way disputed. ‘ ,
*726 The conclusion of the Authority that the petitioner is not a bona fide club is a wholly gratuitous statement made without factual basis. The incorporation of the petitioner was approved by a Justice of the Supreme Court and duly filed in the office of the Secretary of State, a complete disclosure of its membership has been made, and the not insignificant sum of $350,000 has been contributed to its capital structure by a broad diversity of its membership. There is not a scintilla of evidence to indicate that it is other than a legitimate membership corporation.
The second reason advanced by the respondent for the refusal to issue a license is that the petitioner is not the “ sole party in interest” in the application. The affidavit of the respondent Hostetter expands upon this conclusion, stating that in the opinion of the Authority Messrs. Zara and Cascardi “ are the true parties interested in the subject application and that they will continue to be the controlling element with respect to this applicant and the golf club concerned ”; that they are in “ solid control ” of the present operation. The $350,000 payment, which is not disputed by the respondent, is referred to in the affidavit of Commissioner Hostetter as a “ pittance ’ ’ which, according to the Commissioner, when compared with the amount retained by Messrs. Zara and Cascardi, “is not persuasive of the fact that any ownership resides in the 70 members of the club,”
This court is fully aware of the reluctance of the courts as a general rule to upset the exercise of discretionary power by the Authority in the area of licensing. (Matter of Wager v. State Liq. Auth., 4 N Y 2d 465; Matter of Fink v. Cole, 1 N Y 2d 48.) We are also aware of the line of authorities which require judicial annulment of arbitrary determinations which are reached Avithout foundation in fact or in law. (Matter of Matty’s Rest. v. New York State Liq. Auth., 21 A D 2d 818, affd. 15 N Y 2d 659 ; Matter of Vitale v. Hostetter, 20 A D 2d 917; Matter of Tortora v. New York State Liq. Auth., 24 A D 2d 1019; Matter of Wonderful Bar v. Hostetter, 24 A D 2d 1020.)
There is no doubt Avhatever that, through the very substantial mortgage retained by Messrs. Zara and Cascardi, those individuals have a very substantial interest in the title to the property upon Avhich the golf club is situated. Their interest, however, is that of mortgagees, not of an oAvner or an operator. If the petitioner defaults under the mortgage at some future time, it is entirely probable that the mortgagees will foreclose and even regain title upon the foreclosure sale, in which event the respondent, through license revocation proceedings, will be amply protected. In the interim, however, while the former owners have a lien upon the real property, they have no control *727 over the operation of the club. It is the voting members who control the operations of the club, and there is not even a hint that any one of these members is a nominee of, or under any obligation to, or under the control of either Caseardi or the Zaras. In fact, the manager of the club who has been hired by the petitioner corporation is a person who was previously a manager under the former club and whose services were previously terminated because of a personality conflict with the Zaras. It was after this individual was assured that the Zaras would have no control over him that he agreed to accept the position. Accordingly, the conclusion of the Commissioner that Cascardi and the Zaras are in solid control of the club is as groundless as his statement that $350,000 is a “ pittance ”.
This is not the type of case where any individual is acting as a “front” for any undisclosed, undesirable principals from whom the privilege of trafficking in alcoholic beverages should be withheld. The record here indicates no intention of hiding or concealment, but is a candid disclosure of a business relationship reached at arm’s length. The individuals who comprise the present membership in the petitioner corporation have contributed a substantial sum of money to the operation of the golf club and they should not be deprived of their 19th hole and perhaps their entire investment because of some administrative apprehension which is based upon conjecture rather than facts.
The determination of the respondent is annulled and it is directed forthwith to issue the license to petitioner.